UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OFAMERICA,<br><br>                                  Plaintiff,<br><br>                  -against-<br><br>OHIO SECURITY INSURANCE COMPANY,<br><br>                                  Defendant | 23-cv-3451 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff The Travelers Indemnity Company of America ("Travelers") and Defendant Ohio Security Insurance Company ("Ohio Security") move for summary judgment. For the reasons stated below, Travelers' motion is GRANTED and Ohio Security's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Ohio Security issued an insurance policy to Sutega USA Corp. ("Sutega"). Travelers brought this suit seeking a declaratory judgment that, under the policy, Ohio Security has a duty to defend and indemnify Shawmut Design and Construction ("Shawmut"), Zara USA, Inc. ("Zara"), Eklecco Newco LLC ("Eklecco"), and Pyramid Management Group, LLC ("Pyramid") in a state court lawsuit.

### I.        Construction contracts

In 2015, Zara, Shawmut, and Sutega entered into several contracts related to the construction of a new Zara store in Palisades, New York. First, on June 12, 2015, Zara and Shawmut entered into an agreement for Shawmut to be the general contractor on the new store. Dkt. 31-17. The contract states that Shawmut "shall supervise and direct the Work." Dkt. 31-18 § 9.2.1.

In August 2015, Zara and Sutega entered into a service agreement. Dkt. 26-5. The service agreement stated that Zara wanted to employ Sutega "as an independent contractor, to install millwork at the new Zara store located in the Palisades Center, West Nyack, New York." *Id.* The agreement required Sutega to install furniture according to specific plans, to supply an adequate amount of trained and competent employees and supervisors, and to be responsible for the behavior of its employees. Dkt. 34 ¶¶ 48–50. The copy of the service agreement provided to the Court is signed by only Sutega. Dkt. 26-5 at OHIO0076. The parties do not have information about whether Zara signed the agreement. Dkt. 32 ¶ 37.

Finally, on August 10, 2015, Shawmut entered into a construction site access agreement with Sutega. Dkt. 27-6. Among other things, the agreement required Shawmut to provide Sutega

access for the delivery of materials, equipment, and performance of its work. Dkt. 34 ¶ 53. In addition, Sutega was required to obtain general commercial liability insurance that names Shawmut as an additional insured and provides primary and non-contributory coverage to Shawmut. ¶ 55. The agreement also contained an indemnity clause, requiring Sutega to "indemnify, hold harmless and defend" Shawmut for certain losses. Dkt. 27-6 ¶ 4.

## II.    Insurance policies

Travelers issued a commercial general liability policy to Shawmut that ran from November 1, 2014, to November 1, 2015. Dkt. 32 ¶ 27. The Travelers policy provides commercial general liability coverage subject to certain terms, conditions, and exclusions. Dkt. 34 ¶ 43. The Travelers policy contains an amendment to the "other insurance" provision stating:

> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including umbrella or excess policy.

¶ 44; Dkt. 31-4 at 17. The Travelers Policy provides coverage to Zara, Eklecco, and Pyramid as additional insureds subject to certain terms and conditions. Dkt. 32 ¶ 28; Compl. ¶ 11, Dkt. 1.

Ohio Security issued a commercial general liability policy to Sutega. Dkt. 32 ¶ 1. The Ohio Security policy period was August 12, 2015, to August 12, 2016. *Id.* Sutega's place of business is listed as an address in Miami, Florida. ¶ 2. As relevant here, the policy states that Ohio Security has "the right and duty to defend the insured against any 'suit' seeking" damages for bodily injury. ¶ 6.

Shawmut, Zara, Eklecco, and Pyramid were not named in the Ohio Security policy. ¶ 5. But the policy contains a Commercial General Liability Extension Endorsement that defines "insured" to include:

> any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury … caused in whole or in part by[ y]our acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" … occurs … subsequent to the signing of such written contract or written agreement.

Dkt. 26-1 at OHIO0044 ¶ G(1). The Ohio Security policy also contains an "other insurance" provision that states:

> If an additional insured's policy has an Other Insurance provision making its policy excess, and you have agreed in a written contract or written agreement to provide the additional insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover.

*Id.* at OHIO0047 ¶ H(a).

### III.     Underlying state court lawsuit

John Autenrieth was an employee of CLP Resources in 2015. Dkt. 32 ¶ 15. During that time, CLP was hired by Apollo (Sutega's millwork subcontractor) to do construction work at the new Zara store. ¶¶ 15, 51. On October 27, 2015, (that is, when both the Travelers and Ohio Security policies were in effect), Autenrieth was injured while using a table saw during the construction. ¶¶ 15–16. On May 21, 2018, Autenrieth sued Eklecco, Shawmut, Apollo, Pyramid, Zara, and Palisades Center, LLC in New York state court. Dkt. 26-2. Among other things, Autenrieth alleges that the defendants breached their non-delegable duties under New York law to maintain a safe work environment. Dkt. 32 ¶ 18. While Sutega was not mentioned in the complaint, Zara filed a third-party complaint naming Sutega as a third-party defendant on July 6, 2020. ¶ 11, 13.

That brings us to this case. Shawmut's insurer, Travelers, says that Sutega's insurer, Ohio Security, has a duty to defend and to indemnify Shawmut, Zara, Eklecco, and Pyramid in the state court action. Ohio Security denies that its policy covers these entities. The parties filed cross-motions for summary judgment, but Travelers only presses its claims as to Shawmut. It doesn't seek summary judgment with respect to Zara, Eklecco, or Pyramid, nor does it oppose Ohio Security's motion as to those entities. *See generally* Dkt. 31. So the only disputed issue for the Court is whether Shawmut is covered by the Ohio Security policy. The answer is yes, at least as to Ohio Security's duty to defend Shawmut.

## LEGAL STANDARDS

"Summary judgment is appropriate where the record reveals that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In determining whether there is a genuine dispute, "the court must resolve all ambiguities, and draw all inferences, against the moving party." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

## DISCUSSION

### I.     Choice of law

The parties first dispute whether Florida or New York law governs the Ohio Security insurance policy. Ohio Security argues that Florida law applies because the Ohio Security policy lists Sutega as having a Florida address and contains two endorsements specific to Florida but no endorsements specific to coverage in another state. Dkt. 24 at 10. Travelers argues that New York law should apply because the policy covers services in New York. Dkt. 31 at 9.

This Court sits in New York and so applies New York's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The "first step" is to determine "whether there is an actual conflict between the laws invoked by the parties." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001) (internal quotation marks omitted). An actual conflict exists if "the applicable law from each jurisdiction provides different substantive rules" that are "relevant to the issue at hand" and "have a significant possible effect on the outcome of the trial." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (cleaned up).

For purposes of these motions, the Court finds that no actual conflict exists. The only disputed issue is whether the Ohio Security policy covers Shawmut. As discussed below, Ohio Security would still have a duty to defend Shawmut under Florida law, which is Ohio Security's law of choice.

## II.   Additional Insureds

Under both Florida and New York law, an insurer's duty to defend is broad. *See High Point Design, LLC v. L.M. Ins. Corp.*, 911 F.3d 89, 94 (2d Cir. 2018); *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc*., 10 F.4th 1255, 1261 (11th Cir. 2021). In both states, the question is whether the underlying claim could potentially fall within the insurance policy's coverage. *See N. River Ins. Co. v. Leifer*, 2023 WL 2978970, at *1 (2d Cir. Apr. 18, 2023); *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005).

The Ohio Security policy creates various requirements before a party may be defended as an "additional insured." As relevant here, coverage for an additional insured is limited in three important ways. First, to qualify as an additional insured Sutega must have "agreed to add" the person or organization "as an additional insured in a written contract, written agreement or permit." Dkt. 26-1 at OHIO0044 ¶ G(1). Second, the liability at issue must have been "caused in whole or in part by" Sutega's "acts or omissions, or the acts or omissions of those acting on [Sutega's] behalf." *Id.* And finally, the acts or omissions must have been done "in the performance of [Sutega's] on going operations for the additional insured that are the subject of the written contract or agreement." *Id.*

### A.   Zara, Eklecco and Pyramid

Ohio Security argues that Zara, Eklecco, and Pyramid are not additional insureds because they do not satisfy the first requirement under the Ohio Security policy: Sutega never "agreed to add" any of them "as an additional insured in a written contract, written agreement or permit." Dkt. 26-1 at OHIO0044 ¶ G(1). Ohio Security contends that none of Sutega's contracts (namely, the construction site access agreement and the service agreement) mentions adding Zara, Eklecco, or Pyramid as additional insureds under the Ohio Security policy. And it says that the service agreement was never signed by Zara. Dkt. 24 at 11. Travelers does not respond to these arguments, so this portion of Ohio Security's motion is granted as unopposed.

### B.   Shawmut

Travelers argues that Shawmut meets the additional insured requirements. The Court agrees. First, the Ohio Security policy states that an "insured" under the policy includes "any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit." Dkt. 26-1 at OHIO0044 ¶ G(1). And the site access agreement states that Sutega "shall name [Shawmut] as an additional insured" in its general commercial insurance policy. Dkt. 27-6. So Shawmut meets the first requirement.

Second, the Ohio Security policy is limited to coverage for bodily injury that is caused "in whole or in part" by the acts or omissions of Sutega or Sutega's agents. This requirement is met

because, in the underlying lawsuit, the plaintiff claims that his injuries were caused "by the negligence, statutory violations, willfulness, wantonness, and lack of care" of, among others, Apollo, who the parties agree was acting as Sutega's subcontractor. Dkt 26-2 ¶ 72; Dkt. 34 ¶ 51. The plaintiff also alleges Shawmut's liability is based in part on the actions of Apollo. Dkt. 26-2 ¶¶ 22, 57–58.[1]

Ohio Security cites *Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp., LLC*, 2022 WL 5238711 (11th Cir. Oct. 6, 2022). But there, the Eleventh Circuit (applying Florida law) held that a company was not an "additional insured" under an insurance policy because the company was being sued for its own negligence. *Id.* at *3 ("The complaint in the Underlying Action alleges that [additional insured] GM&P was negligent in its furnishing of materials and installation of the Glass Façade. It alleges no negligence by [named insured] KNS nor any of its agents."). The court held that the insurance policy's "in whole or in part" language was best read to only cover damages where the insured or the insured's agents "completely or partially caused" the damages. *Id.* Even if that standard applies here, it is met based on the factual allegations in the underlying lawsuit that Sutega's agent at least partially caused the bodily injury.

Finally, the Ohio Security policy is limited to liability caused by actions or omissions "in the performance of [Sutega's] on going operations" for Shawmut "that are the subject of the written contract or written agreement." Dkt. 26-1 at OHIO0044 ¶ G(1)(a). Ohio Security argues that the written contract at issue (*i.e.*, the site access agreement) "does not contemplate Sutega performing any ongoing operations for Shawmut." Dkt. 24 at 16. Instead, the agreement "only contemplates Shawmut performing operations for Sutega—providing access to the Project—and not the other way around." *Id.*

But Sutega's argument that the agreement's sole focus was Shawmut providing Sutega "access to the site" does not hold up. Shawmut was the general contractor on the project, and Sutega (and its agents) were being brought in to do part of the work. *See, e.g.,* Dkt. 34 ¶¶ 46–51. So naturally, while the agreement is titled a "Construction Site Access Agreement," it also contains "mutual obligations" pertaining to work on the project. Dkt. 27-6. Access to the site is provided not just for the fun of it, but "for [Sutega] to perform its Work," and "for the performance of the Work of [Sutega], in accordance with [Shawmut's] schedule for the Project." *Id*. And the agreement makes clear its focus is Sutega's work on the project, noting that Sutega is responsible not only for access-related issues, but also delays in Sutega's work, improper timing of work, damage to Shawmut's work, or the "defective Work of [Sutega]." *Id.* Indeed, the agreement states that it is "the responsibility of [Sutega] to check in with Shawmut Site Superintendent at the start and end of each shift and to alert Shawmut Representative of *any issues* in advance so that there

---

[1] The complaint wrongly alleges that Shawmut, rather than Sutega, hired Apollo. Dkt 26-2 ¶ 22. Nevertheless, there is no question that the lawsuit bases Shawmut's alleged liability, at least in part, on the acts or omissions of Apollo. *Id*. ¶¶ 22, 57–58. And there is no dispute that Apollo is Sutega's agent. Dkt. 34 ¶ 51.

may be adequate time to resolve issues." *Id.* (emphasis added). This easily fits the insurance contract's requirement that potential liability relate to "the performance of [Sutega's or its agents'] on going operations for the additional insured[.]" Dkt. 26-1 at OHIO0044 ¶ G(1)(a).

To the extent Ohio Security is arguing that Florida law reads "on going operations" more narrowly, that contention doesn't hold up either. The Florida Supreme Court has explained that, in the context of an insurance agreement, "operations" refers to any "work done in the performance of [the underlying] contract." *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 737 (Fla. 1998). Here, the underlying state court action concerns an individual who was injured at the job site while employed by one of Sutega's agents. Sutega's agent had access to the site pursuant to the access agreement and, as noted above, that agreement pertains directly to the work of Sutega and its agents on the project, and they were obligated to "coordinate [their] activities with those of" Shawmut. Dkt. 27-6. The bodily injury in this case was therefore related to work done pursuant to the access agreement and falls within Sutega's "ongoing operations" for Shawmut.

Ohio Security does not cite any cases that support its reading of "operations" under Florida law. And the two New York cases that Sutega cites are not controlling here. First, in *Kel-Mar Designs, Inc. v. Harleysville Ins. Co. of New York*, 8 N.Y.S.3d 304 (1st Dep't 2015), the First Department found that an insurance company did not need to indemnify parties because the insured did not perform any obligations pursuant to a "written contract" with those parties. *Id.* at 305. Here, the parties do not dispute that there is a written contract between Sutega and Shawmut. Ohio Security also cites *Glynn v. United House of Prayer*, 741 N.Y.S.2d 499 (1st Dep't 2002). where the First Department considered an insurance policy that "clearly limited the coverage afforded [to an additional insured] to liability arising from work performed by the named insured on [the additional insured's] behalf." *Id.* at 503. The court found that work performed in the case fell outside this coverage. *Id.* at 503–04. But *Glynn* provides no guidance here. First, the *Glynn* court's cursory, one-paragraph treatment of the issue doesn't have much reasoning, and it doesn't give this Court much to go on as to the contract language and factual circumstances of that case. Second, to the extent one can piece together the specifics, it appears that the insurance contract in *Glynn* involved different policy language and facts than this case.

Accordingly, the Court finds that Ohio Security has a duty to defend Shawmut in the underlying state court action pursuant to the policy issued to Sutega.

### III.   Primary coverage

As the Court explained above, Shawmut is an additional insured under the Ohio Security policy in the underlying state court litigation. And neither party disputes that Shawmut also has insurance coverage as the named insured under the Travelers policy. Under both New York and Florida law, when (as here) two policies provide insurance coverage, "priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009); *Privilege Underwriters Reciprocal Exch. V. Hanover Ins. Grp.*, 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018).

The Travelers policy's "other insurance" clause states that the "insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including umbrella or excess policy." Dkt. 34 ¶ 44. The Ohio Security policy, in turn, states that "[i]f an additional insured's policy has an Other Insurance provision making its policy excess, and you have agreed in a written contract or written agreement to provide the additional insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover." Dkt. 26-1 at OHIO0047 ¶ H(a). In addition, the access agreement between Shawmut and Sutega states that Sutega was required to obtain general commercial liability insurance that names Shawmut as an additional insured and provides primary and non-contributory coverage to Shawmut. Dkt. 34 ¶ 55.

Travelers argues that Ohio Security is required to provide Shawmut coverage on a primary and non-contributory basis. Dkt. 31 at 24–25. Ohio Security does not respond to this argument. Given the plain language of the insurance contracts and Ohio Security's failure to respond, the Court agrees with Travelers' unopposed argument.

## IV.    Indemnity

Ohio Security argues that even if a duty to defend exists, the Court should not rule on whether Ohio Security has a duty to indemnify Shawmut until the conclusion of the underlying state court lawsuit. Travelers does not raise any arguments in opposition. So the Court will defer ruling on this issue. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 2023 WL 4896169, at *19 (S.D.N.Y. Aug. 1, 2023). However, given the Court's ruling on the duty-to-defend issue, the parties should meet and confer and determine if they can wrap up this case with an agreement that will end this litigation.

## CONCLUSION

The Clerk of Court is directed to terminate Dkts. 23 and 30. No later than May 27, 2024, the parties are ordered to file a joint status letter proposing next steps in this action.

SO ORDERED.

Dated: May 10, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge